Good afternoon Judge Fletcher, Judge Ferguson, and Judge Canvey. May it please the court. My name is Douglas Moylan, the Atty. General of Guam on behalf of the people of Guam. I would ask that I can reserve five minutes for rebuttal. The Governor's Council has submitted early last week, I believe, a reference to an EIC case and we have submitted as of Friday. We fed exit and we actually dropped off a copy. I dropped off a copy today, but it's going to California and here. The petition for permission to appeal that has been filed before the Ninth Circuit, case number 680042 in response to the submission by the Governor's Council. I'm trying to summarize what issue is currently before this court and it's a question of first impression. It's a question of what Congress intended back in 1998 when the people of Guam went to Congress and asked for a constitutional change in our Organic Act in order that they create the position of Attorney General in the constitutional level and empower it. And one of the overall themes that I've noticed in all the paperwork that's been flying around the past four years, I'm sure the court's going to have a dutiful time in taking a look at all the decisions out there, is that in the 700-year history of the Attorney General position of Attorney General, of which the United States has 200 of those years, there are many models. There's 55 jurisdictions within our nation that use an Attorney General, 50 states, four territories and the federal government. And in 1998, the people of Guam went to Congress to create an Attorney General to fight corruption and a perception of political interference with an appointed Attorney General in our territorial jurisdiction, which is the farthest western jurisdiction. In the documents, Your Honors, you'll see that in Guam's history, the evolution of the offices was first the legislature, then the governor became elected, and then all of a sudden, in 1998, the Attorney General comes up. And in the letters that we're passing back and forth with our delegate, Underwood, as well as the senator, I'm sorry, Mr. Trautman, it gleans out exactly what the people of Guam were looking for in creating the position of Attorney General. And one of the problems I see in all these decisions that are out there, as well as in the arguments of opposing counsel, is that nobody is choosing the proper model. Everybody is choosing a model that meets their purpose in the argument. But if we look at the historical documents, the documents that were part of the 1997-1998 change in our Organic Act, they specifically reference Illinois. And by Mr. Trautman, he indicated in his July 16, 1997 letter that he wanted a position for Attorney General that could not be modified by local law through the legislature, and two, that to avoid empire building within the government. But how do we know that that's what the House and Senate voted for and the president signed? In the committee report, which has been submitted, that Congressman Don Young provided, they specifically talked about political interference with the position of Attorney General. And I submit that's one of the key reasons why there is not this attorney-client relationship that's being referenced by the opposing counsels, that the Attorney General serves the people of Guam. Fifty percent of the equation was set up when Congress passed that law in 1998, making the office in the Constitution. The other 50 percent came when the people of Guam, through the legislature, and Congress gave the legislature the authority to make it elected. That's where you had a constitutionally elected Attorney General, democratically elected by the people. So the allusions to the Attorney General having clients in the officials is incorrect. And I would reference the Patrick Leahy statement, Congressman of the Judiciary Oversight Senate Committee, when he confirmed the Attorney General Gonzalez, when he said that, quoting Justice Iredell, that the Attorney General is not called the Attorney General of the President. It's the Attorney General of the United States. And that's equivalent to what issues we have here. Many of it is based in 700 years of history, the idea that the Attorney General does not go into court to represent a government official's position. The government official is a steward of the people. And we've pushed back to what Congress had before them. Guam codes, for the most part, in 1950, were adopted from California civil code. But in 1998, we weren't looking to the California civil code for Attorney General. We went to the most powerful Attorney General in the United States, under Mr. Trotman's analysis, in order to give them the authority to do what was perceived needed to be done, which was to enforce the law against the government officials which were not following the law. There was a provision that was proposed for the bill that would give the Attorney General the power to prosecute all civil cases. And that was removed. Isn't that correct? In fact, ma'am, the bill as introduced, we do have it as part of both our supplemental excerpt, I believe, as well as the EIC petition. It specifically tempered the position of Attorney General, the bill as introduced into Congress, by saying the legislature could create it, and I believe the legislature set forth its duties. What Congressman Don Young of Alaska did on his committee was report it out, a bill that tracked the language of Illinois, the 1970 constitutional amendment in Illinois, that the Attorney General of Guam shall be the chief legal officer of the government of Guam. And it ended there. And I noticed Judge Canby is here, and he was one of the judges that sat on the Nelson v. Adda case, which talked, if I'm not correct, I apologize, that also incorporated the Verdado v. Baldwin case, both our 9th Circuit cases, that talked about in our Organic Act, whenever they were making a statement such as the governor shall have these powers, they put qualifying language in it subject to the laws of Guam, which gave the local legislature some ability to tinker with the powers in office. In the Attorney General's position, the bill as introduced contained qualifying language. It even gave the legislature much more authority to affect the powers of the Attorney General. The bill as passed was starkly different, including the statement chief legal officer, which wasn't in the original legislation. And I also submit in Mr. Trotman's letter, I believe it's the April 1997 letter, he specifically also had indicated being tempered by the legislature. But the bill that was reported out of the committee and voted upon and passed was a simple chief legal officer of the government of Guam. And that is where I submit to the 9th Circuit that Congress intended to give the Attorney General the tools necessary to do the job ahead of the Attorney General, which was perceived to stop corruption. And you could take judicial notice, since the first elected office of the Attorney General, there's been 50 government employees that have been prosecuted for government corruption, as well as the federal government, all coming out of this era of 1998, having prosecuted and convicted many of the government officials. If we were to adopt your position, in effect we're making the Attorney General the governor of Guam. I can see that the governor under this act does not control the Attorney General, but under your theory it seems to me that the Attorney General would be controlling the governor. This is a very delicate issue, Judge Fletcher, and I thank you for the question. We look at the Lyons v. Ryans case. It's a 2002 Indiana, I'm sorry, Illinois case. It talks about the delicate relationship that the language chief legal officer incorporates all the common law powers of the office. And one of the common law powers is to speak before the court on behalf of the government, the government of Guam. And how I've kind of looked at these issues is if we take this to its logical conclusion, it becomes almost an irrationality. The idea that people could be sued, officials could be sued in our government, and because of their disagreement with the elected Attorney General, that the Attorney General is like a ceremonial position. He's like the President of Israel or the Queen of England. I may represent the government of Guam, but I can't go in and talk on behalf of the government officials because they have different positions and they want to get their own lawyers. And it seems to run afoul of just the language itself, chief legal officer of the government of Guam. 48 U.S.C. 1421A talks about what the government of Guam is. It includes the executive, legislative, and judicial branches. And the governor in the Weaver case that was cited in Alabama, and that is not from Illinois, but it talks about how the governor can have this special appearance right, the ability to come in and give his position as the chief magistrate of the jurisdiction. We acknowledge that. The problem occurs, though, for purposes of legal policy. If the governor can come in on any case, for example, the criminal cases, we have 5,000 active criminal cases right now, the Attorney General, vis-a-vis the campaign that's run for the elected office, puts out a political platform. The people select which Attorney General candidate based on the political platform. And for the next four years, the Attorney General executes that political platform. If the governor comes in and says, I also have a right to be heard because the people of Guam are suing a defendant, that will, you know, it's not really heard about, but that is the logical conclusion of what can happen if the governor is permitted to have, say, a voice in court. And I'm not trying to make this up, Your Honors. I'm alluding to Indy. I'm sorry. Illinois, which is a little bit. I mean, how you look at the attorney general's powers, usually the governor may depend on the context of the case. I agree that if you find somebody who's guilty of fraud and you start to prosecute him and the governor comes in and says, I want you to stop that prosecution. Then quite possibly the government doesn't have that power over you. But if somebody sues the election board and the legislature of Guam says the election board can hire its own attorneys, I don't know whether that raises the same kind of an issue. This is where the article four of the Constitution comes in, the plenary power of Congress to administer the territories. In 1998, when they made that statement that the attorney general of Guam shall be the chief legal officer of Guam, it has been interpreted to mean that it encompassed all of the common law powers of the attorney general. And when the Guam legislature, which had a scheme, the position of attorney general had been in the statutes for at least 50 years, 40 years before the Congress stepped in. Any statute that exists at the time that was in conflict with the common law powers of the attorney general, as adopted by Congress, should fall under the plenary powers of the Congress, because they were administering the territory and all of a sudden coming in. If it's not read that way, then there would be no meaning to why you have a constitutional amendment. If you permit the Guam legislature to say, Mr. Attorney General, you may be the chief legal officer of Guam, but we're going to add something to the end of that congressional statement, except when it relates to the election commission. And I submit that the election commission's function is an inherent function of the executive branch. And under the common law interpretation, especially from Illinois, the attorney general is the only voice to speak before the courts when their position differs from the attorney general's position. And I note that the question before the court was on a due process question. Did they not properly send out an initiative notice? It was the opinion of the attorney general's office that they violated the law. Therefore, when they were sued, the attorney general stepped in and says that we agree there was a violation of due process. It was a simple question. We stipulated to have it resolved. The election commission, though, had a differing opinion. That's exactly how the case is. The legislature may have, too, since it tried to pass a hearing of that before the election. Yes, sir. And that is the case. And we reviewed it and believe that there was problems with vested rights and due process because they did it after the fact. Right before the election, they changed the law and the voters of Guam, in our opinion, had a right to a. And it started from maybe six months before they had to get the petitions. They had to qualify. The language had to be developed. And then they put it down and sent out the voter initiative pamphlets, which did not have the statute in it. I don't know if my colleagues have more questions on the merits. They can go ahead. I'm I'm interested in a jurisdictional question. Yes, sir. The question is the if the remand by the district court is either for lack of subject matter jurisdiction or for a defect in the removal procedure. We don't have jurisdiction, do we? There's no appeal. That was the from my understanding. That is what's being appealed. The fact that the removal was improper. There was an error in the removal. I guess the remanding it back to the superior court. That is what is being said. Let's say the district court remands for lack of jurisdiction. That's that's a hypothetical question. Do we say there's no appeal from that? Or do we say, well, we'll decide whether the district court was right or wrong on saying there was no jurisdiction. And then if we once we decide that, then if the district court was right, we can dismiss the appeal. Or do we just say, well, it was the district court purported to send us back for lack of jurisdiction. There's no appeal. My understanding is that the Ninth Circuit maintains jurisdiction to determine whether jurisdiction existed for them to remand the case back to the superior court. Well, we have jurisdiction to determine whether we have jurisdiction. And I guess I'm asking whether we have jurisdiction to determine whether the district court jurisdiction. I would I would hope I would say yes, Your Honor, that that's it. What we're saying that the your position is that we we have to decide whether the district court was correct in saying there was a defect in removal procedure. Yes, sir. And they guess which would get us to the question of whether that's correct. You have you represent the only one who represents the defendants or whether others represent. Yes, sir. And I would like to make a comment on the basis that not everybody had consented. Yes, ma'am. But in order to determine who had to consent, we almost have to look at the question of whether these other parties can be there. Yes, Your Honor. And I have you raised that very important question as to what role the governor has for purposes of giving his voice. And under the common law authority, the control of litigation is through the attorney general's office. The fact that this democratically elected thing emphasizes that that statement. The governor has a right to give his his input under the Weaver authority in Alabama. And we're saying that it has a strong chief legal officer analysis. We agree with it. But this is also a question for the question. First impression for this jurisdiction. Is this a final order? It was yesterday. Yes, Your Honor. I understand that because the it was dispositive of the case, the remand order went to the judge Carter. There was no further act to be taken. We appealed it once the order was docketed. So it would be a final order for purposes of the federal court system. And for the court's information, the two cases, I understand one of them is still active because it broke broke back into two cases. The Merrill case is still active. The Schulte case. There is still no final judgment on the case. So the time to appeal hasn't begun on that case. I don't think we always look at this as being the final order. The case is going back to the state court for disposition. So I'm not sure that it's really a final order. There may be an exception under the collateral review. Yes, Your Honor. For purposes there. There's no further action that I understand is happening in the district court. And the case was disposed of. And that's the reason why we took. That would be the final order. What happened when it was remanded. Yes. Are you speaking of the Superior Court? That would be the final order in the Superior Court. My understanding is that this was an appealable decision of the court. I reserve time. Thank you. May it please the court. Daniel Benjamin, on behalf of the governor of Guam. I'll be sharing time with the Election Commission who had raised the jurisdictional issues that we've joined in. I did want to briefly address those. The question was asked whether or not the court properly has jurisdiction based on the issue of whether or not this was a jurisdictional procedural defect that caused the remand. This case was remanded based on a procedural defect. Whether the issue of who properly represents the defendants here is intertwined, and that basically becomes the form of the or the reason for the remand, or whether that somehow is a substantive issue that's separate, I think is actually somewhat hard to distinguish. But I do think that the Election Commission makes a very valid point that ultimately this is a procedural remand. And that in many ways the court is being asked to look into that procedural remand and being asked to treat it as a substantive issue to try and get some appeal here where there may well be no appeal lying. Wouldn't we at least have to decide who the parties were before we could answer the question? Because the question was remanded, as I understand, because there wasn't a consent of all of the necessary parties. Don't we have to decide who those parties are? Yes, Your Honor. The district court had to decide those issues. The problem becomes, as I believe the court was asking a couple minutes ago to the Attorney General, what happens if the district court answers a question as to jurisdiction or a procedural defect but gets the question wrong potentially? The court has said in the past that even a defective ruling on jurisdiction is not reviewable on appeal of a remand order. What case is that? It's cited, I believe, Your Honor, in the Election Commission's brief. It would be AVIDA v. Charles Schwab and Company, 300 F. 3rd, 11112, 9th Circuit, 2002. And it states even if the district court's order is a remand, then the matter still is not reviewable on appeal. Your Honor, that's stated. This is obviously an issue of critical importance to the Governor of Guam. This is a fundamental question of whether the Governor has a voice in litigation. This is not litigation which the Attorney General was appearing in his capacity representing the public interest. This was litigation where the Attorney General purported to appear on behalf of the Governor in a case in which the Governor was a named defendant, in a case where the Governor had a different policy view than the Attorney General, and a case where the Governor had signed into law a bill that the Attorney General then purported to enter a stipulation nullifying. And so if the Attorney General's view on this case was right, what we would have is a situation where the Governor would have no voice even in litigation which he is a named party. The Attorney General talked about his own amendments. There's no reply brief file. His original brief and his argument now have never addressed the Governor's actual powers. We have a Governor in Guam who under 48 U.S.C. Section 1422 has the executive power. He has the responsibility for the faithful execution of the laws in Guam, and he has general supervision and control over all parts of the executive branch. In particular, the power of faithful execution of the laws is important here. In the Duke Mason case, the same power exists in California, and the late Justice Mosk in that case said specifically because of that power, because of the Governor's power over the faithful execution, he has a right to speak as to public policy in the state, even in a case where the holding is broader than this case even requires. Here we actually have the Governor named party. There the Governor was named party, but they also were talking about in terms of setting public policy, which is a power that the Attorney General is claiming. In terms of what Congress actually did in terms of the Attorney General's powers here, we have the 1998 Amendment. All that it states is that the Attorney General is the chief legal officer of the Government of Guam. There are no enumerated powers, unlike the Governor's position. Now, the Attorney General has argued that this was based on Illinois law. However, Illinois law until 1970 did not actually refer to the Attorney General as being what it actually says now under the 1970 Constitution as legal officer. They never stated chief legal officer at all in their Constitution. But the cases in terms of Illinois law go back over 100 years, and the reason they go back is because the Illinois case is all based on different language, which states that the Attorney General shall have such powers as are prescribed by law. And the Illinois court in the Fergus case and also the Hunt case, both of which were decided well before the 1970 Amendment, said it was based on that language that the Attorney General had gained common law powers because prescribed by law meant common law powers. There is no basis in the actual congressional record in terms of the report or otherwise to suggest that Illinois was adopted as the model for the Attorney General's amendments. All that we have is the short congressional report itself, which states that the intent here was to give the legislature the option of creating an elected Attorney General's office. In that regard, when one does look at the actual statute, of course, what it states is that the governor retained the power to appoint the Attorney General unless the legislature chose to act. Also, if there's a vacancy in the office of the Attorney General, the governor retains the power to appoint the Attorney General during that time of vacancy. That's creating a statute that gives the legislature certain powers. It certainly may be relevant when the Attorney General is acting outside of the executive branch responsibilities, when he's not wearing his hat of representing specific executive branch members, most particularly the governor. But it is not relevant here, or it is not creating a change in the Organic Act here to somehow take away the governor's powers over the faithful execution. All that has occurred is that the legislature was given the power to create an elected Attorney General at its option. There was never an effort made by Congress anywhere in that law to diminish the powers of the governor or to leave him in a position where he cannot appear in litigation in which he is a named party. Also troubling about the Attorney General's argument, obviously, and we've cited several cases where this issue has come up, the implication of the Attorney General's argument is that the Attorney General can enter a case, as he did in this case, and stipulate away the rights of the named parties who were the governor, the legislature, and the election commission. In doing that, he ensures that the courts never get to pass on the matter. The Attorney General stated that he believed that the law that was passed by the legislature and signed into law by the governor was unlawful, but it's for the courts to ultimately determine the constitutionality of the statute. Well, what if the suit was simply against the government of Guam? The government of Guam, Your Honor, is a more complex situation than when there's a named party and the jurisdictions are somewhat more split. Couldn't the Attorney General concede away that one? The court would never get a chance to look at it. I believe, Your Honor, in that circumstance, the governor would have the right to intervene in the litigation. In fact, that's the ex parte Weaver case that they themselves cite, assuming that the Attorney General ultimately controls a representation of the government of Guam. The only circumstance where this has thus far come up is in the EITC litigation, where we've cited the Santos case decisions as well as the Simpao decisions, the cases involving the earned income tax credit. And in those cases, thus far, the district court has consistently ruled that the governor ultimately was the arbiter of the government of Guam's position and entitled to present it. Those cases are a bit peculiar because there's particular statutes regarding the Guam tax system and the governor's control of that, so I don't wish to overstate those cases. But we do know that the governor is charged with the faithful execution of the laws of Guam. And I do believe that if the issue ultimately comes before the court about who controls the government of Guam, even outside of the tax cases, that the correct ruling would be that the governor would be the primary voice. The Attorney General has a role, and that role may be to come in as an intervener and represent the public interest. There are cases, we've cited them, we're not trying to silence the Attorney General's voice in cases in which that type of patriotic standing is applicable. It's not applicable in those tax cases, but there are cases in which the Attorney General has a role protecting the public interest. But that's different than when you have a case where the government of Guam is actually a name defended. When the government of Guam is a name defended, and it's the executive branch that's truly the defendant, it is the governor of Guam that under the Organic Act, he continues to have the entire executive power. He continues to have the responsibility for the faithful execution of the laws of Guam. He continues to have general supervision and control over the entirety of the executive branch. And in that regard, the Attorney General, when he is operating within the executive branch, the Organic Act continues to state in Section 48 U.S.C. 1422C, subsection B, that executive officers have only such powers and duties as conferred by law. The Attorney General only has those responsibilities as to the executive branch the legislature gives him, which have to be consistent with the underlying Organic Act. As to the underlying Organic Act, all those powers do remain with the governor. But, again, that is an issue that goes a bit beyond this case because this is a simpler case because we have the governor as a name defended. We do not have the governor of Guam as a name defended. I want to give the Election Commission an opportunity to address the Court if the Court has no further questions. How would your argument affect the position of the Attorney General, if the Attorney General was appointed to end corruption or prosecute corruption? Well, the prosecution of crimes, obviously. Let's say that the governor was some high official in Guam, whose part of the governor's office is involved in corruption. Does the Attorney General powerless to see that that person is prosecuted? No, Your Honor. The governor, to my knowledge, has never attempted to intervene in any criminal prosecution brought by the Attorney General. You have had cases involving, haven't we, involving where the governor of Guam has been prosecuted? Yes. Who carried out that prosecution? Your Honor. Who was the prosecuting authority? The more recent cases have been the Attorney General in his present capacity. In terms of a former governor, when Governor Berdallio, prior to these amendments, was prosecuted, I believe it was by the U.S. Attorney's Office, if there was a local prosecution. It was before my time. Obviously, the U.S. Attorney's Office has a role, too. But in regard to criminal prosecutions, the way it has operated is that the Attorney General has prosecuted the governor or government officials in those cases. The only cases in which the governor has become involved in criminal prosecution has been where there's a conflict because it actually involves the Attorney General. And in those cases, the governor has asserted a right to appoint a special prosecutor solely for the purpose of having an independent prosecutor looking at a case involving alleged misconduct by the Attorney General. But that's the only cases of which I'm aware where the governor has attempted to step into that role. And I believe that would be supported by the governor's power to ensure the faithful execution of the laws of Guam, to ensure that there is somebody who can enforce the laws and prosecute such a case. But obviously, if there was a case where the governor attempted to interfere with a prosecution by the Attorney General's Office of a criminal matter, that would be brought to the courts. And I think it would not be surprising if the courts would say that the Attorney General would have the right in a criminal matter to ensure that there's proper prosecution. But that's not the same as saying that the Attorney General can step into court, as he did in this case, and attempt to start stipulating away the rights of the governor to deprive the governor's voice. It's also not the same even in the case of the government in a civil lawsuit, where it is a matter where the governor sets policy because it involves the executive branch. The governor needs to have a voice and needs to be setting executive policy, whether he's doing that outside the courtroom or in the courtroom. The result, I believe, Your Honor, should be the same. If the Attorney General sues the governor civilly on behalf, presumably, of the government, Bob, the governor isn't recruited from hiring an attorney, is he? That's quite correct, Your Honor. And that was one of the issues cited by the magistrate in his report and recommendation. He had actually previously been a Superior Court judge and had heard an action where the Attorney General had brought suit against the governor, and the governor retained as Conflicts Counsel my law firm. And we came in and there was no objection whatsoever to the governor's use of Conflicts Counsel. Well, the issue was done, but the issue wasn't really contested in that case. Well, the issue wasn't contested, and it's been consistently allowed. But, obviously, there was the recent ruling of the Superior Court of Guam that we brought to the Court's attention in our 28-J letter, specifically regarding the governor's right to hire Conflicts Counsel. Thank you. Thank you, Your Honor. Good afternoon, Your Honor. My name is Cesar Cabot, and I represent the Guam Election Commission, and I'm very happy to be here. To answer the concern that was raised by Judge Fletcher, the 24th Guam Legislature did propose language before the 1998 Amendment to the Organic Act, and it was to the effect that the AG represents the government in all civil cases in which the government of Guam may be interested. And this is conceded in the AG's brief in pages 14 and 15. In fact, this language was, in fact, rejected by Congress because the version passed in 1998 struck out the language that was being proposed by the Guam Legislature. To answer the questions raised by Judge Canby, if the Attorney General sues the governor, which has happened on a number of occasions during the four years, nearly four years, that the AG has been in office, the Attorney General in those particular cases has recognized the right of the governor to hire independent counsel. And this was one of the cases that was cited in the magistrate judge's decision, Judge Manobusan, which was adopted by Judge Carter of sitting as a district court judge, that in the Moreland v. Santos case, which was before the Superior Court, that's exactly what happened. The Attorney General sued the governor. The governor came in with his own independent counsel, and the issue was being litigated, the Attorney General versus the governor utilizing independent counsel. There have also been occasions where the Guam election has been sued by the Attorney General. And in that particular case, and I can recollect one, where, again, the Attorney General has allowed the Guam Election Commission to be represented by myself as independent counsel for the autonomous agency, the Guam Election Commission. Now, I feel that the ruling of the lower court should be affirmed, and it came up with two rulings. The first of which was removal of cases from the Superior Court to the Federal District Court required the consent of all defendants. Even if we were to assume arguendo that the Attorney General represented the interests of the governor, the legislature, and the Guam Election Commission, the fact remains that when he removed his case to the District Court, he did not secure the consent of all of those three defendants. Not from the counsel representing the defendants, but from the defendants themselves. And I believe that that was the ruling of the magistrate judge, and I agree with it. And if this panel agrees with that ruling, then I believe it need not go any further. But quite frankly, if this panel were to address the other issue, my clients would not be disappointed. Because the second issue of the ruling of the District Court was when the Attorney General decides to undertake representation of a government agency, he has a duty to zealously defend the positions advocated by the agency. If he is unable or unwilling to do so, he should step aside, like he has in the other cases, and allow the Guam Election Commission, an autonomous agency, or the governor, or the legislature, to come in and have a voice with its own independent counsel. When you say that all defendants must consent to removal, don't they normally consent through their counsel? Yes, Your Honor. But the way that I read Lapidus and the rationale of the District Court, the magistrate judge rejected that and said, you didn't come in here with the consent, the affirmation of your clients. Because that's exactly what the Attorney General attempted to do. And it was rejected by the magistrate judge. And I agree with the rationale, or what I understand is the rationale of the District Court judge in my reading of Lapidus, that it requires the actual consent of the defendant. Now the facts of this case are quite egregious. We have a situation where the plaintiffs in the lawsuit are the proponents of a gambling initiative. And what they contended was that the Guam election violated Guam law. Not federal law, but Guam law. When it failed to mail a 72-page initiative measure, thicker than this document, to approximately 70,000 registered voters of Guam, they said that they contended it was required under Guam law. The Guam election took the position that, number one, we didn't have the money to do it. It was not appropriate by the legislature. And number two, under reasonable reading of the Guam law, it was not required to send the full text as long as you gave a summary of the points covered under the initiative measure. Obviously, the Attorney General disagreed. And he came in and entered an appearance before the answer was due, on behalf of the governor, legislature, and Guam election commission, saying, I represent all of you, and I will stipulate to a preliminary injunction to stop the Guam election commission from counting the ballots of the gambling initiative. And number two, we will stipulate to the Guam election commission what they did violated Guam law and was unconstitutional. That was quite a shock to the Guam election commission, because we took, of course, a different approach, and we believed at all times that what we did was entirely consistent with what was allowed under Guam law. But the issues that are being complained of are really violations of... Where does the main opposition come from? I'm sorry, Your Honor? Where does the main opposition come from? I don't understand the question, Your Honor. Well, you said there's a lot of opposition to legalized gambling. Is that what you're saying? That's where it came from. Yes. I don't know, Your Honor, and I'm sorry I don't fully understand the question, but... There was a vote, and it was voted down. That's correct. That's correct. In fact, in hindsight, if you look at the rulings of the district court, Judge Munson, sitting as a district court judge, rejected the application for a preliminary injunction days before the November general election. And it was remanded back to superior court, and Judge Bregalio, sitting as a Guam superior court judge, threw this case out on an issue of lack of standing in that there's no evidence that the plaintiff was denied their constitutional right to vote. In fact, she did vote. So here, you really don't have federal questions. Really, what is being complained of are alleged violations of Guam law. But the issue here really is even more focused. It's, does the Guam Election Commission, an autonomous agency that has enjoyed the ability to hire independent counsel for as long as it has been in existence, have the right to its own independent counsel when the attorney general's position clashes with that of its own? And I believe that it does, and I believe that the district court also agreed with that rationale. Are there any questions that Your Honor would like me to address? Do you have any different view on the jurisdictional question from your co-criminal? No, I don't, Your Honor. In fact, we've laid out the jurisdictional challenges, and I won't belabor the point, but I think that if the court chooses to do so, it may take the position that there is no jurisdiction by this court. And if the court finds that there is on the basis of younger abstention or Burford abstention, as it has in the past, they may abstain from addressing the issues as it has ruled in previous cases involving Guam cases, Your Honor. Thank you very much. With that, I submit. Thank you. Your Honor, you know, this is coming down to the question of what makes up the government of Guam and whether the position of attorney general is ceremonial or not. The fact that a government agency, which the government of Guam is nothing without its agencies, can actually have two different forms of legal policy being set. If we initiate an action, we set legal policy through the action we initiate. But if they're sued, that means the agency can't step in their shoes and set the legal policy. And that was one of the factors that Charles Troutman referenced in his letter, the fact that there would be empire building within the government of Guam. And since the office became elected in 2003, you've seen that.  You know, you're making you're making this argument in a context that's it's a tough one for you. You've got an election scheduled. And you're coming in and saying, not only should this election not be held, but I'll concede it shouldn't be held. And nobody else can say anything about it. Won't go to court or anything else. It's all over. People don't get to vote. The court doesn't get to hear the case. You can make a concession to the proponents and they get their own special election later. In fact, Your Honor, our position was that they would have to resend out the notices. The Times would have to start again. The document they're talking about is in Guam law. They were under Guam one. The excuse is we didn't have the money. That's insufficient for purposes of giving the voters the right to a copy of that initiative. The fact they actually had the election and it failed miserably. You know, personally, I'm against gambling, but the due process right to democracy, the fact that a voter had a right to sit at their home and had mailed to them the initiative packet under Guam law. And they decided to make it shorter. And just the voters didn't. The attorney general, one of the primary responsibilities of the attorney general throughout the nation, is to protect the public interest. And when government officials don't follow the law, it's incumbent on the attorney general to sue. And that's why he didn't sue. I'm sorry. He didn't sue. He got sued. No, we were actually in the process of stopping the election commission when the two plaintiffs, which were part of the gambling initiative, sued first. And we were put in the position of having to represent the government of Guam through its officials. The government of Guam is represented through officials. They are not the client. And that's where such problems occur in the decision that is currently before you. The Weaver case sets out a scheme of how things are to be handled in terms of an attorney general coming in and speaking, making decisions on behalf of the government official. And that's in the Illinois statutes, Illinois cases, as well as in the Alabama Weaver decision that's been cited. But what we have a problem with here is – I'm sorry, I'm losing a thought here. Well, Guam has its own Supreme Court now, doesn't it? Yes, sir. It has its own Supreme Court. My response to that is – Doesn't it have an intermediate appellate court? No, Your Honor. Okay. They fought hard to get that Supreme Court. They fought very hard to get that Supreme Court. Why don't you just take this to the Supreme Court? Your Honor, part of the 150,000 population on Guam, the politics is very intense. The judges are all appointed by governors. I can't say anything other than it's a system that – there was a reason why in 1998 they had to go to Congress to do all this. They could have done it on Guam by statute, but they felt they had to go to Congress to protect the office against local legislation changing and disenfranchising the office. The fact the legislature in the following year, 1999, made it elected gave it the independent character, and that's why the current opinion you have before you is so troubling because it talks about an attorney-client relationship when the creature that Congress created was supposed to be independent and immune against political interference. Immune from political interference is the same people that we're supposed to be representing. How can you have an attorney-client relationship with a person that you're supposed to be immune from political interference from? How can you be elected and say that the people voted me in but take instructions and orders as a client from a government agency? And that's why the Illinois statutes, the Illinois cases since 1970, even before that, because they reconciled the Feeney case and others, talk about this special relationship that the attorney general has in the system. And right now we're going to a system failure because the whole office of attorney general is not only being pushed aside where we can't speak on behalf of the government because it's made up of all these government agencies, which the governor controls most of them. The election commission has its own independent board. But there is no reason why you would want to be the attorney general because you don't speak on anyone. And to come in on the MECAS and intervene— Well, the attorney general of California doesn't speak on behalf of the government. And that's why I distinguished. In California, there are 55 jurisdictions. There's different models out there. But the model that was chosen by Guam in 1998, which is 200 years after, after everybody started their constitutions and did all their case authority, Guam picked and chose which jurisdiction it wanted, and it chose Illinois. And what I'm saying is that that is the model which the court, the federal court, since this is an anomaly, the federal court system uses a appointed model. The president appoints the attorney general. That's why I cited to Senator Patrick Leahy when he confirmed the current attorney general, pointed out that you've got an appointment situation. You've got this premature that the president can remove you. But that's not what Congress did for Guam. Congress did something that wasn't the federal model. They went to a local state and its constitution had nothing to do with the federal government and said this is what we're going to make for the territory of Guam, which under Article IV we have an obligation to administer. Well, they gave him an option. They didn't say it had to be that. Yes, sir. That's why I said it's 50 percent of the equation. Congress said we're going to give you a constitutional office, but we're going to let you, Guam legislature, decide whether it's going to be elected or not. And that's what runs afoul of the attorney-client relationship, because the legislature the following year in 1999 made it elected. And that resolution they are speaking of is Resolution 186, passed to the Congress on October 8, 1997, and specifically talked about an independent attorney general. And the need for an independent attorney general, that's one of the recitals in it, an attorney general in an elective office whose occupant answers not to the governor, but directly to the people. That's part of the EIC submittal that you have there. You know, you came in to prosecute corruption, right? Yes, sir. You're not being prevented from doing that, are you? And what I would like to point out is there's only four jurisdictions in the United States which have an attorney general that has criminal prosecution authority and civil prosecution authority. They're the small jurisdictions like Delaware, Alaska, Rhode Island, Guam. We have an attorney general that doesn't like a district attorney. We don't separate it in these small jurisdictions. But the language adopted by Congress, chief legal officer of the government, doesn't distinguish between a prosecution arm and a civil arm. And Justice Fletcher was very astute for mentioning that they did talk about a civil arm for the attorney general, but it was all washed away, and Congressman Young, when he passed the bill, made one attorney general that had a civil authority and a criminal authority. What the opponents are arguing is that we're going to create a bipolar attorney general. When I stand in my role as the prosecutor of criminal cases, I have full authority. But then when we step in the role as the prosecutor of civil matters, I've got to be careful because, you know, there's a client out there. And I'm saying that there is no difference. The people of Guam are the client. The decisions are made to protect the public interest, whether it's the public interest in criminal cases or the public interest in civil cases. And that is why we took the action we took. The case was, by the way, removed to the federal court. Do you know an example of any other attorney general that brings a lawsuit in a civil matter to protect the public interest? Yes, sir. The Weaver case is a very thorough discussion about bringing the lawsuits in protection of the public interest. The Illinois line of authority, all that has to be done is a search for Illinois cases on the attorney general, and it opens up what the attorney general that I'm speaking of is all about. I'm not pulling this out of the air. This has all been researched. It's part of the Illinois Constitution and all the case authority that came there from. It's unique to the federal system. Congress said that as far as Guam is concerned, it's the Illinois model. Yes, sir. And the reason why I say Congress said it is because it's in the letters. You had the bill as introduced. You had Charles Troutman and Delegate Underwood passing letters back and forth. You have a committee report, and then you have the final product, and it's all consistent. And the only state ever mentioned in there was Illinois. And the chief legal officer language was from Illinois, according to Charles Troutman. He asked Delegate Underwood, who was a non-voting delegate, part of Congressman Young's committee, to pass that version of the bill. But the bill itself doesn't use the word Illinois. No, sir. It was modeled after Illinois. That is our position. So the answer is yes, sir. Yes, sir. It was not. It does not mention a state in it. And I think your time's up. OK. Thank you, sir. OK. Thank you. Recess until 9 a.m. tomorrow morning.
judges: Goodwin, B. Fletcher, Fisher